**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

**DONALD ROCHON**
**17192 Murphy Avenue**
**Unit 18498**
**Irvine, California 92623**

**Plaintiff,**

**v.**

**ERIC HOLDER**
**Attorney General**
**U.S. Department of Justice**
**950 Pennsylvania Avenue NW**
**Washington, DC 20530**

**Defendant.**

**Civil Action No. ___________________**

**January 30, 2013**

**JURY TRIAL DEMANDED**

**VERIFIED COMPLAINT**

Plaintiff Donald Rochon, through counsel, brings this action against Defendant Eric Holder, Attorney General, in his official capacity, over the Federal Bureau of Investigation (FBI) for refusing to issue him a retired law enforcement officer identification card.

The issuance of the retired identification is determined by FBI policy and the Attorney General's Guidance as enacted in House Resolution 218 (HR-218), pursuant to the "Law Enforcement Officers Safety Act of 2004" (LEOSA), Public Law 108-277, 18 U.S.C. §926C.

A name check inquiry on Mr. Rochon's qualifications for the retired identification by the FBI Office of Professional Responsibility/Inspection Division, Security Division, Health Care Unit, and Criminal Justice Services Division generated no denials in their replies to the requesting office within the Agency.

Despite this good standing status, the FBI Human Resources Division did refuse to issue the identification card. Their refusal was retaliation for Mr. Rochon's previous protected EEO activity

— lawsuits for discrimination based on race (African-American) and reprisal. The identification is required for a retired special agent to carry a concealed firearm in their resident state and interstate to protect them and their family.

## I. PARTIES.

1. Plaintiff Donald Rochon (African-American) is a U.S. citizen and resident of Irvine, California.

2. Eric Holder is the Attorney General of the United States, and the official in charge of the U.S. Department of Justice.

3. The Federal Bureau of Investigation (FBI) is a federal agency and a unit of the U.S. Department of Justice.

## II. JURISDICTION.

4. Mr. Rochon reasserts paragraphs 1-3 of this Complaint.

5. This Court has jurisdiction pursuant to Title VII §706(f)(3), as amended, 42 U.S.C. §2000e-5(b).

6. This Court has subject matter jurisdiction pursuant to 28 U.S.C. §1331 (federal question).

7. Venue is proper in this Court, pursuant to 28 U.S.C. § 1391 (c).

## III. FACTS.

### A. Mr. Rochon's Prior EEO-Protected Activity.

8. Mr. Rochon reasserts paragraphs 1-7 of this Complaint.

9. The FBI hired Mr. Rochon as an FBI special agent on November 15, 1981.

10. From1983 through 2010 , Mr. Rochon brought multiple EEO complaints against the FBI.

11. This series of cases, based on race discrimination (African-American) and reprisal for engaging in EEO protected activity, were highly visible within the FBI, the Department of Justice, and appeared in many news articles nationwide from 1987 through 2010.

12. A May 13, 2009, article in *The Washington Post* concerning race equality in the Justice Department and FBI highlighted Mr. Rochon's more than 20-year campaign against racist treatment from white FBI employees. (Carrie Johnson, *Holder's Comments on race Prompt Requests for Legal Help*, in *The Washington Post*, May 13, 2009, at A3).

13. Mr. Rochon's litigation culminated in the favorable decision, *Rochon v. Gonzales*, 438 F.3d 1211, 1219-20 (D.C. Cir. 2006).

14. This case concerned FBI retaliation against Mr. Rochon when the Agency refused to investigate death threats against him and his family from a federal prison inmate. The appeals court found that this inaction was sufficiently significant and could dissuade other special agents from engaging in Title VII protected activity.

15. The *Rochon* appeals court decision was later adopted by the U.S. Supreme Court and cited multiple times in *Burlington Northern v. White*, 548 U.S. 53 (2006).

16. A February 2010 article on reprisal directed to FBI managers cited *Rochon v. Gonzales* multiple times. (Lisa A. Baker, JD, *Retaliation in Discrimination Cases, Eliminating Fear of Reprisal,* FBI Law Enforcement Bulletin, 25-32 (February 2010).

17. The last EEO settlement between Mr. Rochon and the FBI took place on January 5, 2010. This settlement concerned three separate matters: (1) a retaliation claim for refusal to investigate death threats against Mr. Rochon; (2) a breach of contract claim concerning the FBI's failure to discipline managers who discriminated against Mr. Rochon; (3) a reprisal

claim for mishandling salary and retirement benefits by the FBI's Human Resources Division (HRD).

18. The FBI HRD was involved in finalizing and had executed Mr. Rochon's employment documents pursuant to the pertinent January 5, 2010, settlement provision:

> Plaintiff [Donald Rochon] will be deemed to have been a "law enforcement officer," as defined in Title 5 U.S.C. § 8331(20), for the period from November 15, 1981 through May 31, 2007.

19. On March 11, 2010, Mr. Rochon sent a letter to the FBI HRD Chief Tanya Pinnock notifying her about a February 2010 notice from the Social Security Administration that HRD had not paid Medicare the deductions that the FBI had taken out of his salary.

20. In the same telephone call, Mr. Rochon also informed Ms. Pinnock that he had completed training and was waiting for his state law enforcement firearm qualification card in the mail. He was advised by HRD that once he received it to contact the FBI HRD Retirement Unit for the protocol on the FBI retired identification (ID) card.

**B. Mr. Rochon's Application for the Retired Identification.**

21. On March 20, 2010, Mr. Rochon notified the FBI HRD Retirement Unit that he had received his retired Georgia law enforcement state ID card "firearms qualification for active law enforcement officers," and was now applying for the FBI retired photo ID card.

22. Mr. Rochon retired in good standing with full benefits from the FBI on May 31, 2007. The FBI HRD Retirement Unit had executed and certified documents in Mr. Rochon's employment record reflecting he was a retired law enforcement officer in good standing.

23. Mr. Rochon was directed to an FBI Office where his retired ID card photo was taken.

24. The HRD Retirement Unit then sent Mr. Rochon's March 20, 2010, application to HRD Unit Chief Joseph McQueen, Badge and Credential Unit, for processing.

25. The "Law Enforcement Officers Safety Act of 2004" (LEOSA) permits retired law enforcement officers to carry a concealed firearm in their state of residence and interstate to protect themselves and their families.

26. Prior to enactment of LEOSA (or HR-218) in 2004, the FBI routinely provided retired ID cards for many decades to all special agents as mere proof those agents had retired in good standing.

27. According to the HR-218 requirements, one must obtain separate retired identification cards from the FBI as photographic proof they are retired – as well as a separate annual ID card for "firearms qualification for active law enforcement officers" directly from the state entity in which he or she resides. A retired agent must carry both cards as a pair in their resident state, and when traveling interstate.

28. According to the FBI "FINAL PROCEDURES FOR RETIRED CREDENTIALS AND IDENTIFICATION CARDS FOR RETIRED/RETIRING EMPLOYEES," dated April 15, 2005:

> It should be understood that the ID cards are **only** to identify the retired Agent as a retired law enforcement officer. Retired Agents must still apply and qualify through their state of residence to carry a weapon. [Emphasis in original.]

29. Mr. Rochon, who lived in Georgia at the time, applied to a Georgia state law enforcement entity and received the state retired ID card for "firearms qualification for active law enforcement officers" after receiving the state level training as required by HR-218.

30. All that was needed thereafter was a photo ID card from the FBI that Mr. Rochon had in fact retired in good standing as a special agent on May 31, 2007.

**C. Mr. Rochon's Vetting for FBI Employment and Retirement.**

31. Before the Agency could sign the January 5, 2010, settlement restoring Mr. Rochon's rights as an official FBI employee for retirement while he was on a prior Title VII "front pay" agreement, the FBI HRD first needed to know his updated background history.

32. The FBI HRD has re-employment policy and statutory grounds for disqualifications. For example, Title 5 U.S.C. § 7371, "Mandatory Removal From Employment of Federal Law Enforcement Officers Convicted of Felonies".

33. The FBI had prior knowledge of an alleged arrest in 1970 and alleged charges in 1997.

34. The 1970 incident was a mistaken identification of a cold and a vitamin pill by the Culver City, California, Police Department while Mr. Rochon, then age 20, was driving in a predominately white neighborhood where he resided. This fact is reflected in Mr. Rochon's FBI 1981 background investigation for special agent employment in an FBI Airtel, dated September 10, 1981. The FBI conceded Mr. Rochon "was never arrested and was released".

35. The 1981 FBI Airtel also enclosed a 1970 certificate from the Culver City Police Department that certified under California Penal Code § 849(b)(1) the incident "shall not be deemed an arrest, but a detention only."

36. The FBI also had, from prior civil discovery, the background history of a 1997 dismissed case of an alleged assault that was brought by Mr. Rochon's ex-wife. The police determined these were based upon false statements by her and were motivated to gain financial spousal support.

37. The police determined his ex-wife had actually fallen off a horse breaking her arm in front of witnesses in Kanab, Utah, at the very same time that Mr. Rochon was in Los Angeles, California.

38. Once his ex-wife was confronted with evidence by law enforcement officials concerning her false charges, she asserted her right against self-incrimination.

39. On May 6, 1998, the Kane County, Utah, Prosecutor filed a motion to dismiss, and the same day the Kane County, Utah, Justice Court granted the Order.

40. The FBI Office of General Counsel (OGC) had the 1997 Utah facts and the 1998 dismissal that was discussed in their recent July 2, 2009, civil discovery deposition of Mr. Rochon, along with exculpatory documents of March 13, 1998, March 24, 1998, and April 6, 1998.

41. On November 10, 2009, both the Department of Justice, Civil Division, and the FBI OGC informed Mr. Rochon that he was eligible — while on prior front pay — for the FBI to execute a new agreement that certified him as "returned to duty with the FBI" as a special agent.

42. Mr. Rochon had just adopted his current wife's 11-year-old daughter on October 15, 2009, in Camden County, Georgia. He later sent the FBI HRD a certified copy of a Certificate of Adoption in November so his new daughter could be accepted for his survivor benefits.

43. Federal law requires that all states provide a fingerprinted criminal background check (as of October 1, 2006) to the FBI Criminal Justice Services Division (CJIS) on all adoptive parents.

44. The State of Georgia statute was in full compliance with that federal law on CJIS when it came to Mr. Rochon's application approval in the summer of 2009 on the adoption. It is a required disqualification under Federal law, and to be followed by the Georgia Adoption Courts, if:

> The applicant has ever been convicted of felony child abuse or neglect; spousal abuse; a crime against children (including child pornography); or a

> crime involving violence, including rape, assault, or homicide, but not including other types of physical assault or battery.

45. That certified Certificate of Adoption provided to the FBI HRD on November 17, 2009, for his daughter's survivor benefits, was also proof that Mr. Rochon had had another successful background investigation — for his approval as an adoptive parent.

46. While in coordination with the FBI OGC, the FBI HRD executed on December 10, 2009, Mr. Rochon's "**Verification of Law Enforcement Service**" that stated:

> This is to certify that the following retiree participated in the investigations of violations of laws of the United States and performed duties of a hazardous nature. While employed, the retiree's services were **entirely satisfactory** and met the requirements necessary to retire. [Emphasis added.]

47. These words in the HRD executed verification of law enforcement service on Mr. Rochon is actually similar to the words on the FBI retired ID card that is at issue in this complaint.

48. While writing an agreement on law enforcement benefits, if the FBI believes a special agent is not qualified for the obligatory retired ID card, the 2005 Attorney General Guidance mandated the FBI "enter into an agreement in which the subject agrees that he or she is not qualified, the subject shall not be issued the retired LEO credential."

49. The FBI OGC, after years of civil discovery on Mr. Rochon, saw no need for this provision, and the January 5, 2010, settlement agreement was executed by the FBI OGC and HRD.

**D. First Denial of the HR-218 Retirement Identification Card.**

50. When Mr. Rochon applied to the FBI for the HR-218 retired agent ID card on March 20, 2010, the HRD sent his name check throughout the FBI for the standard routine reply

inquiries back to HRD to determine if he had any disqualifications pursuant to the established requirements in LEOSA, Title 18, U.S.C. § 926C(c).

51. The name checks included the FBI Office of Professional Responsibility (OPR)/Inspection Division, the FBI Security Division, the FBI Health Care Unit, and the FBI CJIS Division.

52. The FBI OPR/Inspection Division reply confirmed Mr. Rochon retired in good standing and had not been under internal investigation nor considered for termination.

53. The FBI Security Division reply confirmed Mr. Rochon had not lost his top secret security clearance due to any violations of laws or alleged misconduct.

54. The FBI Health Care Unit reply confirmed Mr. Rochon did not separate or retire from the FBI due to mental instability for his good standing status.

55. The FBI CJIS Division reply confirmed no record that Mr. Rochon was convicted of any charges or other pertinent disqualifications for a denial on the federal firearms laws.

56. HRD Unit Chief McQueen has conceded that he had the FBI HRD December 10, 2009, "Verification of Law Enforcement Service" and Mr. Rochon's March 20, 2010, application supporting his statutory qualifications for the FBI retired ID card.

57. Mr. McQueen has also conceded that he knew during the application process about the then recent court settlement resulting in Mr. Rochon's employment rights through retirement. And Unit Chief McQueen has conceded that he had all the replies from the name check inquiries.

58. A June 9, 2010, FBI CJIS document was one of those name checks sent to HRD Unit Chief McQueen for processing Mr. Rochon's application. This document included a cover memorandum with a record containing the alleged arrest/charges on the 1970 and 1997

incidents which the FBI dismissed when Mr. Rochon was vetted for employment and retirement in good standing, 1981-2007.

59. Neither incident concerned a conviction for a crime under LEOSA specifications or FBI policy for denying an HR-218 retired agent ID card. *See* HR-218 in Title 18 U.S.C. § 926C(c-7), which is described in 18 U.S.C. §922(g), listing persons prohibited by Federal law from possessing or receiving a firearm.

60. FBI HRD managers know or should have known that no special agents have been hired or re-hired by the FBI with a felony conviction or domestic violence conviction.

61. FBI HRD managers know or should have known that there are no special agents eligible to remain employed by the FBI with a felony conviction or domestic violence conviction.

62. Mr. Rochon understands that there are no special agents employed or hired by the FBI with a felony conviction or domestic violence conviction as a matter of FBI policy.

63. Mr. Rochon has no employment history indicating any disciplinary record of misconduct.

64. The June 9, 2010, cover memorandum from CJIS Biometric service merely said:

> The name check performed by the descriptor information only, resulted in a candidate being generated. The charge confirmed and belongs to the individual. After thorough review by the Administrative Services Division and the Office of General Counsel, this candidate is <u>not approve[d]</u> to proceed with the Identification Card Process in conjunction with HR-218. [Emphasis in original.]

65. This routine cover memorandum words meant one is not approved to proceed ***until*** the HRD determines one was not convicted of charges, as the FBI policy and the laws for such a denial require.

66. This standard cover memorandum wording is automatically generated on any type of entry in CJIS on any alleged charge, arrest or detention, regardless if it is stated as dismissed, found guilty, found not guilty, or no disposition noted on the record.

67. Hypothetically, a charge of littering on a sidewalk would generate this same CJIS cover memo wording if it had occurred decades ago – whether before, during, or after FBI employment.

68. The HRD Badge and Credential Unit's mission or role during this vetting process is to determine, using the standards set forth in LEOSA and HR-218, and the Title 18 U.S.C. § 926C(c-7) provisions, if one was "convicted of charges" in Title 18 U.S.C. §922(g), which mandates persons prohibited by Federal law from receiving a firearm.

69. For years, that same CJIS memo was not used by HRD to blindly deny a retired agent ID card.

70. In fact, according to CJIS FBI Biometric Section Chief Kimberly Del Greco's April 5, 2011 sworn statement:

> If a record check on an HR-218 card applicant was positive for a charge, the memorandum would state that the candidate "is not approved" to proceed with the identification card process. However, the **Biometric Services Section has never had a role in evaluation whether an applicant is qualified to receive a law enforcement identification card**. Biometric Services merely sends the data and cover memorandum to the appropriate parties at FBI Headquarters **so that HRD can make an informed decision** in their assessment of applicants. [Emphasis added.]

71. Furthermore, according to CJIS FBI Assistant Director Daniel Roberts' April 22, 2011, sworn statement:

> The processing of law enforcement identification cards is not a CJIS Division function. The Human Resources Division (HRD) draws on CJIS resources in order to inform their decisions.

72. If not convicted according to FBI policy, HRD Unit Chief McQueen was required by standard FBI procedures to send the retired ID card to Mr. Rochon. Instead, Mr. McQueen sent Mr. Rochon's application to Mr. Anthony Bladen's Office, then Assistant Director (AD), of the HRD, for a reprisal denial that was due to Mr. Rochon's prior EEO activity.

73. Subsequently, Anthony Bladen by letter dated June 30, 2010, denied Mr. Rochon's request for the HR-218 card contrary to LEOSA and the FBI policy of a conviction only for a denial.

74. The June 30, 2010, letter stated in full:

> The Federal Bureau of Investigation has received your request for a retired law enforcement identification card. **We regret to inform you that your request for a law enforcement identification card cannot be approved based on a criminal name check the by the Criminal Justice Information Services Division [CJIS].**
>
> Therefore, in accordance with the requirements set forth in House Resolution 218 (HR-218), titled "Law Enforcement Officers Safety Act of 2004," you do not meet the established requirements necessary to receive an identification card.
>
> [Emphasis added.]

75. Mr. Rochon first contacted Mr. Bladen's secretary on July 12, 2010, before writing any letter to him. She said it was impossible for him to be convicted of the alleged 1970 and 1997 matters because it would have obviously disqualified him from employment before 2007.

76. Mr. Bladen's secretary suggested it may be a "mistake or misunderstanding." The reason she gave was the name checks replies reflected he retired in good standing. Mr. Rochon was told the letter clearly meant he is a "convicted criminal" for the HR-218 denial grounds.

77. Responding to Mr. Bladen's denial, Mr. Rochon sent him a July 12, 2010, letter with exhibits explaining the circumstances surrounding the entries in the CJIS name check report, the FBI's prior vetting that neither led to a conviction, and the HRD resulting December 10, 2009, "Verification of Law Enforcement Service" as "entirely satisfactory."

**E. Second Denial of the HR-218 Retirement Identification Card.**

78. In the meantime, Mr. Rochon made inquiries elsewhere on the CJIS record and determined that the record was "updated" in April 2010, just after he had applied to HRD for the retired ID card on March 20, 2010. Mr. Rochon was also told the CJIS record had no dispositions.

79. Mr. Rochon also discovered during the same time period that the Utah Department of Public Safety claimed Utah sent the FBI CJIS a dismissal notice on or about May 6, 1998.

80. The Culver City Police Department at the same time period said they have no 1970 record of any arrest pursuant to California Penal Code § 849(b)(1), "shall not be deemed an arrest, but a detention only", and neither should the FBI have any 1970 record reported in CJIS.

81. CJIS record policy on their page 25, is that California Penal Code § 849(b)(1) entries reported to the FBI are to be automatically expunged from the CJIS record.

82. Given the circumstantial evidence, Mr. Rochon began contacting Mr. Bladen's office multiple times during the last week of July 2010 and the first week of August 2010. He alleged that due to his prior recent EEO activity involving HRD manager Tanya Pinnock, someone at HRD may have been involved in altering his CJIS record as a new EEO reprisal.

83. Despite Mr. Rochon's attempt to deal with Mr. Bladen or with another designated manager by Mr. Bladen to resolve this with an FBI inquiry on the facts, he was repeatedly ignored.

84. On August 10, 2010, Mr. Rochon notified Mr. Bladen's office he had to make contact with an EEO counselor at FBI headquarters due to the EEO statute of limitation requirements. On information and belief, Mr. Bladen told his secretary to put Mr. Rochon in contact with HRD representative Jessika Rovell to discuss the CJIS record "updated" in April 2010.

85. On August 11, 2010, Ms. Rovell said if the CJIS record did contain the word "updated" in April 2010, it merely meant that a CJIS FBI supervisor approved the removal of the States'

exonerating dispositions, and it was not a crime or an act of personnel misconduct. Mr. Rochon strongly disagreed with her and said he wanted an internal investigation.

86. Mrs. Rovell then stated Mr. Bladen could simply ignore Mr. Rochon's July 12, 2010, letter, as well as any exonerating dispositions, to deny his retired agent ID card.

87. The very next day, despite providing corrective information in Mr. Rochon's letter, Mr. Bladen wrote back on August 12, 2010, that he would not reverse the HR-218 retired agent ID card denial. According to Mr. Bladen:

> In accordance with Bureau policy, decisions concerning the non-issuance of an HR-218 card are only appealable to the extent that the Bureau's decision **is based upon a record error** or a record that does not actually belong to the individual requesting the HR-218 Card. [Emphasis added.]

88. Mr. Bladen then concluded in the August 12, 2010, letter that since Mr. Rochon had acknowledged that the records were his, that "... the records upon which the Bureau based its decision are accurate ...."

89. Mr. Bladen's conclusion ignored the matter of "record error."

90. Mr. Bladen claimed a permanent denial is a "Bureau policy" not appealable because the CJIS record belongs to Mr. Rochon who was requesting the retired agent ID card.

91. After informing the Utah Department of Safety that he was having issues with the FBI on mere charges that were dismissed, Mr. Rochon was sent an authorization on November 8, 2010, to the Kane County, Utah, Justice Court. It was to simply expunge the entire 1997 record with a Court Order to be sent directly to FBI CJIS by the State of Utah on Mr. Rochon's behalf.

92. When the FBI CJIS Section Chief Ms. Del Greco learned of Mr. Rochon's plight with the FBI HRD managers on CJIS, she quickly located the Utah Court Order that had already been

sent to them, and expunged all traces of the 1997 Utah incident from the CJIS record.

93. When Ms. Del Greco learned that the FBI HRD wrongly withheld a 1970 record on a California Penal Code § 849(b)(1) exoneration from CJIS going back to Mr. Rochon's 1981 FBI employment date, she expunged all traces of that 1970 incident from the CJIS record.

94. On April 1, 2011, CJIS provided their updated record on Mr. Rochon that he in fact had no record history at CJIS that any arrest or charges ever occurred as clearly required by law.

95. The relevant established FBI policy, guidelines, and directives to the HRD managers is that only a conviction can deny a retired ID card as an issue.

96. Consequently, all the statements from HRD Unit Chief McQueen and AD Bladen that charges alone are a permanent ground for a denial of the retired agent ID card was a pretext for reprisal and discrimination.

97. In April 2011 Mr. Rochon was provided many other facts, to include that all the FBI policy documents for HRD managers stated only a conviction could deny the retired agent ID card.

**F. Mr. Rochon Has Attempted to Mitigate Harm in this Civil Action.**

98. In order to mitigate Mr. Rochon's harm as his legal requirement in this action, Mr. Rochon was told he could reapply for his retired ID card under a recently passed new law.

99. During the course of this ongoing controversy, Mr. Bladen had abruptly resigned from the FBI. So Mr. Rochon signed a release on March 4, 2011, and April 12, 2011, stating that the FBI could provide him the retired agent ID card without it being admitted as evidence of FBI liability in the ongoing reprisal claim on HR-218.

100. Mr. Rochon then reapplied for the retired agent ID card on April 18, 2011, to the new HRD assistant director under the new law signed by President Obama on October 12, 2010, known as, The Law Enforcement Officers Improvement Act, which was enacted within Senate Bill

1132, and immediately superseded LEOSA-HR-218, and amended Title 18, U.S.C. § 926C. The new law provided for, among other things, more armed "former" law enforcement officers.

101. On May 10, 2011, Mr. Rochon's new application under this new legislation in Senate Bill 1132 was sent back to Unit Chief McQueen's Badge and Credential Unit for processing once again. This was to manipulate Mr. Rochon for the sole benefit of potentially culpable individual HRD managers.

102. Between May 10 and August 9, 2011, Mr. Rochon was repeatedly advised his retired agent ID would not be denied. However, the Badge and Credential Unit would not release the FBI retired ID card unless Mr. Rochon also sent a letter he would not seek any criminal charges with the Department of Justice (DOJ) Criminal Division against individual HRD managers.

103. Mr. Rochon notified the HRD Badge and Credential Unit in a July 11, 2011, letter that the issue was only to mitigate his harm by them providing the retired agent ID card under the current requirements as noted in the Senate Bill 1132 legislation.

104. Mr. Rochon has already done everything under the law to mitigate his harm in this action. Sending a signed unilateral letter solely pledging not to pursue criminal charges with the DOJ against potentially culpable individual HRD managers – some of the conduct in question uncovered by the FBI's own investigation – was and is certainly not required of Mr. Rochon.

105. Complicating the criminal misconduct by the HRD, the FBI OGC, Civil Discovery Unit, was later implicated in altering the investigative report (also known as "Exhibit 12A").

106. Supervisory Special Agent Mitchell Motta, who conducted the EEO investigation of Mr. Rochon's complaint at the time, prepared an investigative report that was incorporated as

Exhibit 12A, which was appended to HRD Unit Chief Jessika Rovell's Affidavit. This Exhibit was later removed from the investigative report by the FBI OGC without explanation.

107. HRD Unit Chief Rovell had previously worked at the FBI OGC.

### G. Laws and Guidelines Specifying Conviction as the Only Reason for Denying Mr. Rochon's HR-218 Card.

108. LEOSA, FBI, Attorney General, and EEOC guidelines specify that the only legitimate reason for denying an HR-218 retired agent ID card is proof of a conviction of a crime.

109. The June 9, 2010, FBI CJIS name check record report to HRD managers contained the instruction:

> **THIS RECORD IS SUBJECT TO THE FOLLOWING USE AND DISSEMINATION RESTRICTIONS**
>
> ... IF THE INFORMATION ON THE RECORD IS USED TO DISQUALIFY AN APPLICANT, THE OFFICIAL MAKING THE DETERMINATION OF SUITABILITY FOR LICENSING OR EMPLOYMENT SHALL PROVIDE THE APPLICANT THE OPPORTUNITY TO COMPLETE OR CHALLENGE THE ACCURACY OF THE INFORMATION CONTAINED IN THE FBI IDENTIFICATION RECORD. THE DECIDING OFFICIAL SHOULD NOT DENY THE LICENSE OR EMPLOYMENT BASED ON THE INFORMATION IN THE RECORD UNTIL THE APPLICANT HAS BEEN AFFORDED A REASONABLE TIME TO CORRECT OR COMPLETE THE INFORMATION OR HAS DECLINED TO DO SO. **AN INDIVIDUAL SHOULD BE PRESUMED NOT GUILTY OF ANY CHARGE/ARREST IN WHICH THERE IS NO FINAL DISPOSITION STATED ON THE RECORD OR OTHERWISE DETERMINED.** IF THE APPLICANT WISHES TO CORRECT THE RECORD AS IT APPEARS IN THE FBI'S CJIS DIVISION RECORDS SYSTEM, THE APPLICANT SHOULD BE ADVISED THAT THE PROCEDURES TO CHANGE, CORRECT OR UPDATE THE RECORD ARE SET FORTH IN TITLE 28 CFR SECTION 16.34.

110. The FBI Credentials, Special Agent Gold Badge, and HR-218 ID Card Policy Implementation Guide, **7. Procedures for Requesting an HR-218 ID Cards** (sic) states:

> The request for a HR-218 ID card by an employee that has separated from the FBI may be denied if the former employee has been found **to be convicted** of charges that would render the employee out of "good standing" if they were still employed. [Emphasis added.]

111. The EEOC has repeatedly warned over the many years against basing an adverse employment decision on an arrest:

> **2. Arrests**
> The fact of an arrest does not establish that criminal conduct has occurred. Arrests are not proof of criminal conduct. Many arrests do not result in criminal charges, or the charges are dismissed. Even if an individual is charged and subsequently prosecuted, he is presumed innocent unless proven guilty.

(EEOC ENFORCEMENT GUIDANCE, No. 915.002 at 12 (April 25, 2012)).

112. There is therefore no authority for denying an HR-218 retired agent ID card solely on a prior arrest or charge.

113. The January 31, 2005, Attorney General's Guidance to the FBI Director mandated on page 5, if retired special agents "meet each of the specified **statutory qualifications** to qualified as a retired LEO" in LEOSA, HR-218, Title 18, U.S.C. §926 C(c), then the FBI "**shall prepare and issue a photographic identification card**." (Emphasis added).

114. Moreover, Mr. Bladen had no support for denying Mr. Rochon his appeal of the HR-218 card denial in his August 12, 2010, letter, to Mr. Rochon, in which he stated that the non-issuance of the card was appealable only if the records "were not based upon a record error or a record that does not actually belong to the individual requesting the HR-218 Card."

115. Rather, the instruction accompanying the June 9, 2010, FBI CJIS name check record report stated to HRD managers, in relevant part:

THE DECIDING OFFICIAL SHOULD NOT DENY THE LICENSE OR EMPLOYMENT BASED ON THE INFORMATION IN THE RECORD UNTIL THE APPLICANT HAS BEEN AFFORDED A REASONABLE TIME TO CORRECT OR COMPLETE THE INFORMATION OR HAS DECLINED TO DO SO.

116. The FBI OPR/Inspection Division, Security Division, Health Care Unit, and CJIS Division, in fact did not deny Mr. Rochon's retired ID card in their replies back to the HRD managers.

**H. Discriminating Officials.**

117. Assistant Director Bladen in fact made-up a non-existent "Bureau policy" on August 12, 2010, so he could deny Mr. Rochon the HR-218 card just one day after Mr. Rochon spoke with Ms. Rovell about new circumstantial evidence pointing to HRD managers altering CJIS records.

118. Assistant Director Bladen knew that only a conviction of a crime blocked a retired agent from receiving the HR-218 card in the June 30, 2010, and August 12, 2010, letters.

119. Assistant Director Bladen entered on duty with the FBI on August 8, 1982, and served as Assistant Director of the FBI HRD, beginning May 10, 2009.

120. *The Washington Post* article on May 13, 2009, reported on Mr. Rochon's discrimination allegations in the retirement pay/benefits lawsuit against the HRD where Mr. Bladen was at the time in charge.

121. Given Mr. Bladen's tenure as an FBI employee since August 8, 1982, he had the opportunity to learn about Mr. Rochon's protected EEO activity that began as early as 1983.

122. And given that Mr. Bladen was serving as Assistant Director of the FBI HRD at the time of the January 5, 2010, settlement, he knew or should have known about the agreement that was executed by his HRD high-level managers, with the assistance of the FBI OGC.

123. At the time Mr. Rochon applied for the HR-218 card, Mr. McQueen had served as the Unit Chief overseeing the FBI Badge and Credential Program since September 13, 2009.

124. This program included retired agents' applications for an HR-218 retired agent ID card.

125. Mr. McQueen began employment with the FBI on June 9, 2008.

126. Mr. McQueen therefore had an opportunity to learn about Mr. Rochon's previous protected EEO activity and Mr. Rochon's January 5, 2010, settlement of three EEO claims.

127. Given Mr. McQueen's being in charge of the HR-218 card application process, Mr. McQueen knew for a fact that only a conviction of a crime blocked a retired agent from receiving the HR-218 card.

128. Mr. McQueen knew from FBI policy that mere "charges" could not bar a retired agent's receipt of the card.

129. In a July 11, 2012, deposition, Mr. McQueen conceded that no such FBI policy on charges existed to support the denial of Mr. Rochon's retired ID card.

130. Mr. Rochon was informed in April 2011 that all the retired special agents who had been denied a retired ID card involving Mr. McQueen and Mr. Bladen were either "convicted of charges" stemming from a CJIS entry or were denied by the FBI OPR/Inspection Division.

131. Mr. Rochon was not convicted of any crime and the OPR/Inspection Division did not deny Mr. Rochon's retired ID card in their reply to the HRD as proof he retired in good standing.

132. Mr. Rochon has checked with various current and retired federal law enforcement officers' organizations, and has not found a similar example of a retired special agent being denied

their retired ID card solely on an arrest or charge, and while also not being denied by the FBI OPR/Inspection Division, the Security Division, Health Care Unit and the CJIS Division.

133. At the time Mr. Rochon applied for the HR-218 card, Tanya Pinnock was the Assistant Section Chief in the HRD. In this position, Ms. Pinnock was in the reporting chain for the HR-218 identification card for retired agents.

134. Ms. Pinnock knew about Mr. Rochon's prior protected EEO activity because Mr. Rochon named her as a discriminating official in his 2006/2007 EEO complaint concerning failure to provide him front pay annual salary increases for years 2002 through 2006.

135. At the time, Ms. Pinnock was in charge of processing Mr. Rochon's "front pay" agreement.

136. Mr. Rochon also named her in a 2009 lawsuit concerning salary and retirement benefits.

137. Ms. Pinnock's being in the chain of command in the HR-218 card application process means that she knew or should have known that only a conviction of a crime blocked a retired agent from receiving the HR-218 card.

138. An adequate nexus exists between Mr. Rochon's prior protected EEO activity and the adverse action of denying the HR-218 card.

139. The temporal proximity of the last EEO action, the January 5, 2010, settlement, and the June 30, 2010, and August 12, 2010, denial letters is not the only evidence of a nexus.

140. The additional evidence that the FBI HRD ignored a plethora of instructions – discussed at length above -- restricting denial of an HR-218 card only for a conviction also creates the requisite nexus between Mr. Rochon's previous protected EEO activity and the adverse action here.

141. The discriminating officials were intent on humiliating Mr. Rochon, while also interfering with his safety and security.

## IV. CAUSE OF ACTION.
## (Retaliation)

142. Mr. Rochon reasserts paragraphs 1-141.

143. The elements of a Title VII *prima facie* retaliation case are:

(a) Mr. Rochon engaged in EEO protected activity;
(b) the discriminating officials were aware of the EEO protected activity;
(c) the agency and discriminating officials acted adversely against Mr. Rochon;
(d) a nexus existed between the protected activity and the adverse action.

144. The foregoing establishes unlawful retaliation by the Defendant in violation of Title VII.

## V. RELIEF REQUESTED

**Wherefore,** Mr. Rochon seeks the following relief:

1. The retired agent identification card.

2. Deleting the offensive June 30, 2010, and August 12, 2010, denial letters from Mr. Rochon's personnel records, to include all other related documents.

3. The Agency corrects any other FBI management inequity that may be knowingly hidden as reprisal, and any other equitable relief deemed necessary to stop this ongoing pattern of reprisal.

4. Order the Attorney General to mandate the Department of Justice, Office of the Inspector General, to do an independent investigation of FBI Management misconduct.

5. Compensatory damages.

6. Attorneys fees and expenses for the administrative case concerning the denial of the retired identification card, and for this Court action and lawsuit.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues in this case so triable.

**VERIFICATION**

I declare, under penalty of perjury, that the foregoing facts and allegations made in the Complaint above are true and correct to the best of my knowledge, recollection, and belief.

January 30, 2013
Date

Donald Rochon
Donald P. Rochon
Plaintiff and Complainant

Respectfully submitted,

January 30, 2013

**KLIMASKI & ASSOCIATES, P.C.**

***/s/ James R. Klimaski***
James R. Klimaski, #243543

***/s/ Lynn I. Miller***
Lynn I. Miller, #941559

John P. Racin, #942003
KLIMASKI & ASSOCIATES, P.C.
1625 Massachusetts Avenue NW – Suite 500
Washington, DC 20036-2245
202-296-5600 Fax 202-296-5601
Klimaski@Klimaskilaw.com
Miller@Klimaskilaw.com

***Counsel to Plaintiff Donald Rochon***