# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| DONALD ROCHON, | ) | |
| Plaintiffs | ) | |
| v. | ) | Civil Action No. 13-cv-00131 (KBJ) |
| LORETTA LYNCH, *in her official capacity as* Attorney General of the United States, | ) | |
| Defendant. | ) | |

## <u>MEMORANDUM OPINION</u>

Plaintiff Donald Rochon, a retired special agent of the Federal Bureau of Investigation ("FBI"), recently spent the better part of three years trying to secure from his former employer a certain identification card that would permit him to carry a concealed weapon when he travels.  First, Rochon contacted the FBI to get information about applying for the card and submitted an application to the agency, but the FBI denied his request (according to Defendant, Rochon's application was rejected after an old criminal charge surfaced during the prerequisite name check).  Then, Rochon filed the instant lawsuit against the United States Attorney General, alleging that the FBI had actually refused to give him this post-employment benefit in retaliation for his previously having engaged in protected activity in violation of Title VII, and seeking a court order requiring the FBI to provide him with the card.  (*See* Compl., ECF No. 1, at

22.)[1]  Rochon also undertook to have his record expunged, after which he re-filed his application for a card and, at long last, the FBI issued one to him.  But Rochon persists nevertheless in pursuing his legal claims; he maintains that, as a result of the FBI's alleged undue delay in getting the card to him and its improper suggestion of past criminality, he is now entitled to $300,000 in compensatory damages and a court order that, among other things, generally enjoins the FBI "from discriminating and/or retaliating against [him] in the future."  (Am. Compl. ("Compl."), ECF No. 20, at 16.)

Before this Court at present is Defendant's motion to dismiss the complaint, or in the alternative, for summary judgment.  (Ren[e]wed Mot. to Dismiss or[] in the Alternative for Summ. J. ("Def.'s Mot."), ECF No. 21, 1–2; Mem. of Law in Supp. of Def.'s Mot. ("Def.'s Mem."), ECF No. 21, 9–27.)  This Court referred Defendant's motion, along with the entire case, to a magistrate judge for full case management on September 2, 2014 (*see* ECF No. 34), and the magistrate judge permitted Plaintiff to take limited discovery.  Then, on May 14, 2015, that judge issued a Report and Recommendation that recommended Defendant's motion be denied.  (*See* Report & Recommendation, ECF No. 43.)

On September 30, 2015, this Court issued an Order that declined to accept the recommendation of the magistrate judge.  (*See* ECF No. 49.)  This Memorandum Opinion explains the reasons for that order.  In sum, after a thorough review of the Report and Recommendation, the parties' briefs, the record, and established case law, this Court finds that Plaintiff has failed to provide any evidence from which a jury could reasonably infer that he was temporarily denied the requested card *because of* his

---

[1] Page-number citations to the documents the parties have filed refer to the page numbers that the Court's electronic filing system automatically assigns.

lengthy history of employment-related litigation against the FBI, and thus, the Court concludes that no reasonable jury could find in Plaintiff's favor on the retaliation claim. Accordingly, and as explained fully below, this Court has treated Defendant's motion as one for summary judgment, and so construed, the motion has been **GRANTED**.

## I.   BACKGROUND

The FBI hired Rochon as an agent in 1981. (*See* Compl. ¶ 6.)  To put it mildly, the primary distinguishing feature of Rochon's employment relationship with the agency over the past 30-plus years has been the series of discrimination and retaliation claims that Rochon has made and the litigation that has resulted.  (*See, e.g.*, *id.* at ¶¶ 6–14).  Rochon's numerous lawsuits—many, if not all, of which concluded in settlement—are well-documented in prior opinions, *see, e.g.*, *Rochon v. Gonzales*, 438 F.3d 1211 (D.C. Cir. 2006), and this Court need not recount that history here.  It suffices to note that the first settlement was finalized in 1990, and it entitled Rochon to "front pay" as if he was continuing his work as an FBI Special Agent through May of 2007, which is the time when he would have reached the FBI's mandatory retirement age.  (*See* Pl.'s Mem. in Opp'n to Def.'s Mot. ("Pl.'s Opp'n"), ECF No. 27, at 5.)  Other settlements resolved allegations of retaliation stemming from later contacts with the FBI, and most importantly for present purposes, the parties finalized the most recent settlement agreement on January 5, 2010.  (*See* Compl. at ¶ 14.)

Rochon alleges that, after this last settlement agreement was executed, he wished to take advantage of a federal law that exempts certain retired law enforcement officers from state laws that prohibit the carrying of concealed weapons across state lines.  *See* 18 U.S.C. § 926C.  (*See also* Ex. 3 to Def.'s Mot., ECF No. 21-1, 7–13, at 8.)  To

access that benefit, retired officers must request a specific identification card from their former agency or employer—which is known as an "HR-218 card"—and the FBI itself has issued a policy document that addresses the circumstances under which HR-218 cards "may be issued[.]" (Ex. C to Def.'s Mot., ECF No. 21-3, 15–22, at 16–17.)  The document states that, to be issued an HR-218 card, retired FBI agents must satisfy a list of criteria, including the requirement that "no issues are revealed in an NCIC III check for Agents who retired prior to the implementation date." (*Id.* at 17; *see also id.* at 16 (explaining that the agency created the document to provide "status of availability of . . . identification (ID) cards for retired/retiring Special Agents").)[2]

An NCIC III check (which is referred to in the parties' briefs and this Opinion as a "name check") is part of the background review that is a standard component of the FBI's process for considering an HR-218 card application.  (*See id.* at 18; Pl.'s Statement of Genuine Issues, ECF No. 27-29, at 4.)  A division of the FBI that is known as the Criminal Justice Information Services ("CJIS") performs the NCIC III check (*see* Decl. of Joseph McQueen ("McQueen Decl."), ECF No. 21-4, at ¶¶ 7–10 (identifying CJIS as a division of the FBI and describing its role)), and when such a name check is requested, CJIS runs the applicant's name through its database to determine whether that person has been charged with, or convicted of, a criminal offense.  (McQueen Decl. at ¶ 8).[3]  If the check reveals a criminal charge, a verification is "conducted to ensure

---

[2] The record indicates that the "implementation date" referenced in the FBI policy document was April 15, 2005.  (*See* Ex. B to Def.'s Mot., ECF No. 21-3, 5–14, at 6–7.)

[3] Rochon states several times that McQueen's declaration is "hearsay" and thus cannot be considered at summary judgment under Federal Rule of Civil Procedure 56(c)(2).  (*See, e.g.*, Pl.'s Statement of Genuine Issues at 3.)  But he provides no elaboration either for this characterization of the testimony or the proposition that the Court cannot rely upon McQueen's uncontested representations when evaluating the summary-judgment motion, and "perfunctory and undeveloped arguments, and arguments that are unsupported by pertinent authority, are deemed waived." *Johnson v. Panetta*, 953 F. Supp. 2d

that the charge was actually associated with the HR-218 applicant[.]"  (*Id.*)  And, upon verification, CJIS generates "a communication stating that the applicant . . . [i]s not approved to proceed."  (*Id.*; *see also* Ex. 6 to Def.'s Mot., ECF 21-1, 19–24, at 20 (the non-approval notification in this case).)  This communication from CJIS is in writing; with respect to an application for an HR-218 card, the CJIS "recommendation for the disposition of the request[]" is attached to the candidate's records and "forwarded" to the FBI's Human Resources Division.  (Sworn Statement of Anthony Bladen ("Bladen Statement"), Ex. 9 to Def.'s Mot., ECF No. 21-1, 29–35, at 32; *see, e.g.*, Ex. 6 to Def.'s Mot. at 20.)

The Assistant Director of the FBI's Human Resources Division makes the final determination regarding whether or not to issue an HR-218 card.  (*See* Bladen Statement at 32.)  According to Anthony Bladen, who was the Assistant Director of the Human Resources Division at all relevant times, he invariably denied applications for an HR-218 card if CJIS generated a negative name check report.  (*See id.* ("Every time I have received a recommendation from CJIS to discontinue a candidate's identification card processing, I have acted in the same manner and have denied the candidate an identification card."); *id.* at 33 (explaining this protocol works to ensure applications are evaluated "in a standardized manner").)

Defendants maintain that such was the case here.  Rochon submitted an application for an HR-218 card on or about April 19, 2010.[4]  There is no genuine

---

244, 250 (D.D.C. 2013).  In any event, Rochon does not contest Defendant's description of the nuts and bolts of the CJIS name check process.

[4] Rochon's actual application is not in the record, and its date is not material to any issue of consequence, but it is clear that he applied for the HR-218 card no later than April 19, 2010, since the name check request was generated on that date.  (*See* Ex. 5 to Def.'s Mot, ECF No. 21-1, 16–18, at 17.)  Moreover, although Rochon asserts that he "applied" on March 20, when he wrote to the FBI's Human

dispute that the CJIS name check revealed two domestic-violence charges arising from a single incident that purportedly took place in 1997—charges that had been brought against Rochon in 1998 in Utah's Kane County.  (*See* Ex. 6 to Def.'s Mot. at 20, 23.)[5] Given this result, and purportedly in accordance with standard procedure, CJIS generated a report stating that Rochon was "not approved to proceed with the Identification Card Process[,]" and sent that report to the Human Resources Division. (*Id.* at 20.) [6]  In a letter dated June 30, 2010, Bladen informed Rochon that his request for an ID card had been denied "based on a criminal name check by [CJIS][,]" which, according to Bladen, demonstrated that Rochon "d[id] not meet the established requirements necessary to receive an [HR-218] card."  (Ex. 7 to Def.'s Mot., ECF 21-1, 25–26, at 26.)[7]

---

Resources division to inquire about "the protocol for obtaining an FBI retirement credential" (Ex. 13 to Def.'s Mot., ECF 21-1, 49–50, at 50), the Court finds it plain that the March 20 letter was not an application but an inquiry about the process attendant to application.

[5] This Court will describe these charges as "the 1998 charges" because, although they relate to an arrest that occurred on December 25, 1997 (*see* Ex. 6 at 23), the record contains a letter from the state county attorney informing Rochon's attorney that his client was being charged, and that letter is dated March 5, 1998 (*see* Ex. 11 to Def's Mot., ECF 21-1, at 39).

[6] In light of the "implementation date" for the NCIC III name check policy (*see supra* n. 2), and the parties' dispute over the specific date on which Rochon "retired" (*compare* Pl.'s Statement of Genuine Issues at 1–2 (asserting, and pointing to documents reflecting, that Rochon's "employment history" terminated on May 31, 2007), *with* Def.'s Mem. at 10 (asserting and pointing to document purportedly reflecting that Rochon "stopped working at the FBI on May 31, 1991")), there is at least a colorable question about the propriety of the agency's determination to run a name check with respect to Rochon's application.  But as it turns out, the parties' date-of-retirement fight is not material under the circumstances presented here because, even if Rochon retired *after* April 15, 2005, and even if that meant he should not have been subjected to a CJIS NCIC III check in the first place, it is undisputed that such a check was actually performed in his case, and Rochon has not claimed that this employment-related action was a discriminatory or retaliatory act in and of itself, nor could the record evidence support any such finding.  Indeed, quite to the contrary, Rochon concedes that the FBI "uses a standard process to review all [HR-218] applications" (Pl.'s Statement of Genuine Issues at 4), and that the NCIC III name check is a part of the agency's standard process of reviewing these applications (*id.*).

[7] Defendants maintain that Bladen himself sent the rejection letter to Rochon to explain why his application had been denied (*see* Def.'s Mem. at 13), but Rochon claims to have evidence that the signature on the letter was forged.  (*See* Ex. 26 to Pl.'s Opp'n, ECF 27-26, at 1 (report from

Rochon subsequently challenged this denial determination in multiple letters to Bladen, asserting that there had been a mistake and that any 1998 charges had been dismissed. (*See* Ex. 14 to Def.'s Mot., ECF No. 21-1, 51–60, at 52; Ex. 10 to Def.'s Mot., ECF No. 21-1, 36–37, at 37.) In response, Bladen stated that, "[i]n accordance with Bureau policy," his decision to deny the card was only appealable "to the extent that the . . . decision [was] based upon a record error or a record that does not actually belong to the individual requesting the HR-218 Card[]" (Ex. 8 to Def.'s Mot., ECF No. 21-1, 27–28, at 28), and that, in Bladen's estimation, Rochon's letters had not demonstrated either of these flaws (*see id.*). Rochon then pursued an entirely different avenue to address the rejection of his HR-218 card application: on November 22, 2010, he initiated proceedings with the Kane County court to have the charges expunged. (*See* Ex. 12 to Def.'s Mot., ECF 21-1, 40–48, at 48.) A Kane County official agreed to the expungement on December 7, 2010 (*see id.* at 47), and a state judge signed the petition expunging the charges on January 28, 2011 (*see id.* at 43, 45).

Rochon filed a complaint against the FBI in this Court on January 31, 2013, alleging that the FBI had retaliated against him for his history of protected activity by denying him the HR-218 card. In late 2013—while the instant lawsuit was pending— Rochon reapplied for the card, and the FBI granted his request. (*See* Compl. ¶ 42.) Rochon then amended his complaint to request compensatory and injunctive relief notwithstanding the fact that Defendant had issued him the requested card; he alleged

---

handwriting expert opining that Bladen's signature is "*not* genuine" (emphasis in original)).) Although Rochon apparently believes this is a smoking gun, this Court is at a loss to see how the proffered handwriting analysis has any bearing whatsoever on the ultimate issue in this case, which is whether the ID card in question was temporarily denied in retaliation for Rochon's protected activity. As explained below, Rochon bears the burden of proof on *that* question, and whether or not it was Bladen or someone else within the FBI who generated the initial denial letter does nothing to help Rochon surmount that hurdle.

that, regardless, the FBI's prior denial was a retaliatory act that had exposed him to harm because it had needlessly delayed the requested permission to carry a concealed weapon across state lines for a three-year period, which had caused him to fear that he would be unable to protect his family and had also injured him mentally and emotionally in various ways. (*See* Compl. ¶¶ 28, 44–45.)  Defendant filed a motion to dismiss, or in the alternative, a motion for summary judgment on March 31, 2014.  As mentioned above, after this Court referred the entire case for full case management to a magistrate judge, a period of discovery commenced (*see* Minute Entry for Proceedings dated October 31, 2014), and, ultimately, the magistrate judge recommended that Defendant's motion be denied (*see* Report & Recommendation, ECF 43).

Defendant timely filed with this Court an objection to the Report and Recommendation on June 15, 2015 (*see* Def.'s Objections to Report & Recommendation, ECF 46), to which Rochon responded (*see* Pl.'s Resp. to Def.'s Objections, ECF 48).  In addition to the magistrate judge's Report and Recommendation, all of the parties' filings related to Defendant's motion are now before this Court, and the Court has reviewed the matter *de novo*.  *Means v. District of Columbia*, 999 F. Supp. 2d 128, 132 (D.D.C. 2013).

## II.   LEGAL STANDARDS

Defendant has moved for dismissal of Rochon's one-count retaliation complaint because, in Defendant's view, the complaint fails to state a claim upon which relief can be granted, or in the alternative, because the record evidence is such that Defendant is entitled to summary judgment.  (*See* Def.'s Mem. at 9–10.)  Where, as here, a defendant maintains that the case should be terminated *either* for defective pleadings *or* because

there is no genuine issue of material fact to be presented to a jury, the court may review the parties' arguments with respect to both of those grounds to determine the extent to which the motion can be sustained. *See, e.g.*, *Smith v. United States*, No. 12-cv-1679, 2015 WL 4880891, at *3–4 (D.D.C. Aug. 14, 2015) (evaluating certain arguments under Federal Rule of Civil Procedure 12(b)(6) and others under Federal Rule of Civil Procedure 56 where defendants filed motion seeking either dismissal for failure to state a claim or summary judgment). However, because such a motion presents these alleged defects as alternative bases for terminating the action, the court may also opt to evaluate one basis for termination of the action and not the other. *See, e.g.*, *Jones v. Nat'l Council on Disability*, 66 F. Supp. 3d 94, 104 n.8 (D.D.C. 2014) ("Because the Court has decided the issues pursuant to the standards set forth in Rules 12(b)(1) and (6), it does not address Defendants' alternative argument that they are entitled to summary judgment."); *VioPharma, Inc. v. Hamburg*, 916 F. Supp. 2d 76, 77, 83 (D.D.C. 2013) (granting summary judgment to defendants who had filed a motion to dismiss, or, in the alternative, for summary judgment, without analyzing the motion under Rule 12); *cf. PDK Labs., Inc. v. DEA*, 362 F.3d 786, 799 (D.C. Cir. 2004) (Roberts, J., concurring) (stating where there "is a sufficient ground for deciding th[e] case," the "cardinal principle of judicial restraint—if it is not necessary to decide more, it is necessary not to decide more—counsels us to go no further").

Here, as explained below, this Court has assumed (without deciding) that Rochon engaged in protected activity and that the FBI's temporary denial of an ID card qualifies as an adverse action under Title VII, and thus, that his complaint states a claim for the purpose of Defendant's motion to dismiss. (*See infra* Part III.) However, this

Court concludes nevertheless that Defendant is entitled to summary judgment on

Rochon's retaliation claim because, based on the Court's examination of the record

evidence that the parties have submitted in conjunction with Defendant's request for

summary judgment, no reasonable jury could find that Rochon was denied the ID card

because of his prior protected activity.  Thus, what follows is a brief recitation of the

legal standards applicable to motions for summary judgment.[8]

Summary judgment will be granted under Federal Rule of Civil Procedure 56 if

"the movant shows that there is no genuine dispute as to any material fact and the

movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  Material

facts are those "capable of affecting the substantive outcome of the litigation[,]" *Blue v.*

*Perciasepe*, 970 F. Supp. 2d 34, 41 (D.D.C. 2013), and a dispute is genuine if the

evidence is such that a reasonable jury could return a verdict for the nonmoving party,

---

[8] To the extent that the Report and Recommendation suggests that there are *two* motions at issue in this case that require distinct determinations (*see, e.g.*, Report and Recommendation at 14–15), and/or that the court "has no alternative" other than to treat a dispositive motion that is presented along with evidence as a motion for summary judgment (*see id.*), the Court here notes its disagreement with that procedural analysis.  Federal Rule of Civil Procedure 12(d) states that a dispositive motion must be treated as one for summary judgment if "matters outside the pleadings are presented to *and not excluded by* the court[.]"  Fed. R. Civ. P. 12(d) (emphasis added).  Courts and commentators have consistently interpreted this rule to require summary judgment treatment of a Rule 12 motion *only* if the court actually *relies* on matters outside the pleadings in ruling on the motion, and this is so even when the defendant requests such reliance "in the alternative" to dismissing the case under Rule 12.  *See, e.g.*, *Robinson v. District of Columbia*, 736 F. Supp. 2d 254, 263 (D.D.C. 2010) ("Whether to consider matters outside the pleadings in connection with a motion to dismiss is a matter wholly within the discretion of the Court."); *Dial a Car, Inc. v. Transp., Inc.*, No. 93-cv-2170, 1994 WL 902774, at *1 (D.D.C. Sept. 8, 1994) (noting courts have discretion to reject extra-pleading material submitted in connection with a motion to dismiss and resolve the motion solely on the basis of the complaint under Rule 12); 5C Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1366 (3d ed. 2004) ("[F]ederal courts have complete discretion to determine whether or not to accept the submission of any material beyond the pleadings that is offered in conjunction with a Rule 12(b)(6) motion and rely on it, thereby converting the motion, or to reject it or simply not consider it.").  Here, Defendant has requested dismissal for failure to state a claim *or* summary judgment (not both), and both parties have relied on matters outside the pleadings as an alternative to resting on their arguments related to the sufficiency of Plaintiff's complaint.  Thus, although it is by no means obligated to do so, this Court has accepted Defendant's invitation to treat the motion as one for summary judgment.

*id.* Accordingly, the court draws "all reasonable inferences in favor of the nonmoving party," and will not "make credibility determinations or weigh the evidence." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000). However, the nonmovant must rely on *evidence—i.e.*, its opposition "must consist of more than mere unsupported allegations or denials and must be supported by affidavits, declarations, or other competent evidence, setting forth specific facts showing that there is a genuine issue for trial." *Blue*, 970 F. Supp. 2d at 42; *cf. Potter v. District of Columbia*, 558 F.3d 542, 549 (D.C. Cir. 2009) (directing that the court should give "credence to uncontradicted and unimpeached evidence supporting the moving party"). Moreover, because the nonmovant's evidence must allow a reasonable jury to find in its favor, "merely colorable" or "not significantly probative" evidence will not preclude summary judgment. *Potter*, 558 F.3d at 549. In other words, a plaintiff who offers only "a scintilla of evidence" in support of its position will not survive summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

## III. DISCUSSION

Title VII prohibits retaliation against an employee "because [the employee] has opposed any practice made an unlawful practice by [Title VII], or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under [Title VII]." 42 U.S.C. § 2000e-3(a). Based on the text of the statute, courts have identified three requirements for a plaintiff who seeks to prove that he has been subjected to unlawful retaliation: such an employee must show that (1) he engaged in an activity that Title VII protects; (2) his employer took a materially adverse action against him; and (3) the employer took the action because of the

protected activity.  *See McGrath v. Clinton*, 666 F.3d 1377, 1380 (D.C. Cir. 2012);

*Jones v. Bernanke*, 557 F.3d 670, 677 (D.C. Cir. 2009); *see also McGrath*, 666 F.3d at

1380 n.3 (explaining these are "the elements that a plaintiff must ultimately prove in

order to win his case").  Notably, although each of these elements is required, the

ultimate question of liability for retaliation often hinges on causation, since Title VII

does not permit past protected activity to be used as a permanent shield against any and

all unpleasant employment outcomes.  *Cf. Univ. of Tex. Sw. Med. v. Nassar*, 133 S. Ct.

2517, 2532 (2013) (emphasizing that the "structure and operation of Title VII" indicates

that Congress did not intend to foist the costs associated with trial "on an employer

whose actions were not in fact the result of any discriminatory or retaliatory intent").

    Here, Rochon's complaint is somewhat vague about what he considers his

protected activity to have been—*i.e.*, rather than pinpointing a particular past act, he

recounts the litany of allegedly discriminatory and retaliatory acts the FBI has

purportedly taken against him over the past thirty years and the "series of cases" he

brought against the agency as a result (Compl. ¶ 7)—and it is not at all clear that his

lawsuits of yesteryear are sufficient support for the retaliation claim he brings today.

*See Carlson v. CSX Transp., Inc.*, 758 F.3d 819, 828 (7th Cir. 2014) ("If the best a

plaintiff can do is allege that he engaged in protected activity and then, years later, the

employer took an adverse action against him, the claim may not be permitted to

proceed.").  What is more, Defendant argues that "the temporary denial of the HR-218

card [does not] constitute[] a materially adverse action because the denial would not

have dissuaded a reasonable worker from making or supporting a charge of

discrimination[,]" and thus, Defendant suggests that, even if taken as true, the

allegations of Rochon's complaint fail to establish the second retaliation-claim element as a matter of law.  (Def.'s Mem. at 19.)  But this Court finds that it need not decide whether the complaint's assertions of protected activity and adverse action would be sufficient to establish retaliation on their face, because, regardless, Rochon has failed to point to sufficient evidence from which one could infer causation (the third element of a retaliation claim).  In other words, even assuming *arguendo* that the allegations in Rochon's complaint would be sufficient to withstand a Rule 12(b) motion, this Court concludes that, based on its review of the record evidence, no reasonable jury could find that Rochon was denied an HR-218 card because of his protected activity, and thus, that summary judgment in favor of Defendant is warranted.

To understand the basis for this Court's conclusion—and also why it cannot accept the legal analysis in the Report and Recommendation—one must first keep firmly in mind the well-established evidentiary burdens that a plaintiff must bear when he or she claims retaliation or discrimination in violation of Title VII.

### A.    The *McDonnell Douglas* Framework And The Plaintiff's Burden Of Proof In Title VII Cases

It has long been recognized that proving the aforementioned elements of a Title VII retaliation claim can be quite difficult for an employee when, as is often the case, the employee lacks direct evidence of retaliation (or discrimination).  *See, e.g.*, *Trans World Airlines, Inc. v. Thurston*, 469 U.S. 111, 121 (1985).  Of course, it is also clear beyond cavil that relying on circumstantial evidence is another permissible method of establishing one's case, and the Supreme Court has adopted guidelines to aid judicial analysis of the strength of a Title VII case that is based on circumstantial evidence. These guidelines grew out of the seminal Supreme Court case of *McDonnell Douglas*

*Corp. v. Green*, 411 U.S. 792 (1973).  *See Swierkiewicz v. Sorema N.A.*, 534 U.S. 506,

511 (2002) (noting that *McDonnell Douglas* established an "evidentiary standard"

governing "the employee's burden of presenting evidence of presenting evidence that

raises an inference of discrimination" by "allocat[ing] . . . burdens and order of

presentation of proof"); *Czekalski v. Peters*, 475 F.3d 360, 363 (D.C. Cir. 2007)

(explaining that the *McDonnell Douglas* burden-shifting framework applies where "the

plaintiff's claim of discrimination is principally supported by circumstantial evidence").

Generally speaking, in retaliation cases, the *McDonnell Douglas* burden-shifting

framework requires that the plaintiff must, first, point to evidence of a "prima facie

case"—*i.e.*, "(1) that he engaged in statutorily protected activity; (2) that he suffered a

materially adverse action by his employer; and (3) that a causal link connects the two."

*Jones*, 557 F.3d at 677.  If a plaintiff identifies such evidence, the burden of

production—but not persuasion—shifts to the defendant to provide "a legitimate,

nondiscriminatory reason[]" for its actions.  *Reeves*, 530 U.S. at 142 (explaining the

defendant's burden here "can involve no credibility assessment").  Then, if the

defendant provides a nondiscriminatory or nonretaliatory reason for the challenged

employment action, "the *McDonnell Douglas* framework—with its presumptions and

burdens—disappear[s]," leaving only the ultimate question of "discrimination *vel*

*non*[.]"  *Id.* at 142–43 (internal quotation marks and citations omitted).  And on *that*

question, the burden of showing that a reasonable jury could find that defendant's

reasons are pretextual and that the real reason for the adverse action was discriminatory

or retaliatory animus falls on the plaintiff.  *See Morgan v. Fed. Home Loan Mortg.*

*Corp.*, 328 F.3d 647, 654 (D.C. Cir. 2003); *cf. Ajisefinni v. KPMG LLP*, 17 F. Supp. 3d

28, 38 (D.D.C. 2014) (noting that, when facing a motion for summary judgment, the non-movant must respond with "specific facts in the record that reveal a genuine issue that is suitable for trial" (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986))).

Perhaps because the requirements of the first step of the *McDonnell Douglas* framework (*i.e.*, the "prima facie" case stage) track the three essential elements of a Title VII discrimination or retaliation claim, *see McGrath*, 666 F.3d at 1380 n.3 (noting the overlap), confusion has occasionally arisen regarding what the law actually requires of the parties.  In recent years, however, the D.C. Circuit has clarified that the need to "make out a prima facie case" is not the be-all-and-end-all of claim brought under Title VII; rather, it is merely a tool that, when used appropriately, helps to guide judges' consideration of the evidence that the parties have presented regarding the ultimate question of whether discrimination or retaliation occurred.  *See Brady v. Office of Sergeant at Arms*, 520 F.3d 490, 493–94 (D.C. Cir. 2009).  Thus, at the summary-judgment stage, if "the defendant has done everything that would be required of him if the plaintiff had properly made out a prima facie case[]"—*i.e.*, if the defendant has proffered a non-discriminatory reason for its challenged decision—"whether the plaintiff really [made out a prima facie case] is no longer relevant" because "[t]he district court has before it all the evidence it needs to decide whether the defendant intentionally discriminated against the plaintiff."  *Id.* at 494 (internal quotation marks and citation omitted).  At that point, in effect, "the burden-shifting framework [of *McDonnell Douglas*] falls away," and the court returns its focus to "the central question" of the case: whether the plaintiff has "produced sufficient evidence for a reasonable jury to find that the employer's asserted non-discriminatory [or non-

retaliatory] reason was not the actual reason and that the employer intentionally discriminated [or retaliated] against the [plaintiff]." *Allen v. Johnson*, 795 F.3d 34, 39 (D.C. Cir. 2015) (internal quotation marks and citation omitted; second and third alterations in original).

Notably, nothing in the D.C. Circuit cases that discuss the parties' relative evidentiary burdens in Title VII cases purports to diminish in any way what a plaintiff must ultimately prove in order to prevail on a discrimination or retaliation claim.  That is, what "falls away" is *the burden-shifting framework itself*, and not the substantive requirements of Title VII—the plaintiff must *still* offer evidence that is sufficient to establish that his employer intentionally discriminated or retaliated against him in violation of that statute, notwithstanding the fact that the defendant has provided a non-discriminatory or non-retaliatory justification.  *See McGrath*, 666 F.3d at 1380 & n.3. What is more, the plaintiff's ultimate burden once the employer has asserted its non-discriminatory or non-retaliatory reason is consistently expressed in the D.C. Circuit's precedents in the conjunctive.  *See, e.g.*, *Allen*, 795 F.3d at 39 (holding that the court must determine "whether the employee produced sufficient evidence for a reasonable jury to find that the employer's asserted nondiscriminatory [or non-retaliatory] reason was not the actual reason *and* that the employer intentionally discriminated [or retaliated] against the employee[]" (internal quotation marks and citation omitted) (first and second alterations in original) (emphasis added)).  This means that summary judgment will sometimes be proper even when a plaintiff "set[s] forth sufficient evidence to reject the defendant's explanation," if it is nevertheless impossible for a rational factfinder to conclude the action was discriminatory.  *Giles v. Transit Emps.*

*Fed. Credit Union*, 794 F.3d 1, 9 (D.C. Cir. 2015) (explaining the ultimate question of discrimination is a holistic inquiry).  In other words, after the defendant provides its reason and the court focuses on whether the evidence is sufficient to support the plaintiff's claim, the evidence before the court "must be such that a reasonable jury could not only disbelieve the employer's reasons, but [also] conclude that the real reason the employer took a challenged action was a prohibited one."  *Walker v. Johnson*, 798 F.3d 1085, 1093 (D.C. Cir. 2015); *see also Giles*, 794 F.3d at 9–10 (holding in the analogous disability-discrimination context, that notwithstanding possibility that a jury could reasonably disbelieve the employer's proffered reason, no reasonable jury could conclude the employer took the adverse employment action because of the employee's disability).

This all means that the Report and Recommendation here—which suggests that a plaintiff bears no burden of proof whatsoever once a defendant articulates its legitimate reason and reasons that this case must proceed to trial simply and solely because Rochon has challenged the proffered justification and attacked the sworn testimony of Defendant's witnesses (*see* Report and Recommendation at 14–15 & n.9)—failed to consider the full scope of Rochon's obligations in opposing Defendant's motion for summary judgment, and thus, mistakenly concluded that Rochon had done enough to demonstrate that there is a genuine issue of material fact for the jury to decide in this matter.  For the reasons explained below, when the appropriate legal standards are applied, this Court reaches the opposite conclusion.

**B.      No Reasonable Jury Could Find That The FBI Denied The Requested ID Card Because Of Rochon's Protected Activity**

The FBI has provided a legitimate, non-retaliatory reason for its initial denial of Rochon's request for an HR-218 card: due to the results of the name check, the CJIS report recommended against allowing the applicant to proceed, and Bladen accepted the CJIS recommendation, in accordance with his ordinary practice.  (*See* Def.'s Mem. at 24; Bladen Statement at 32.)  Therefore, to survive the motion for summary judgment in accordance with the proper legal standards, Rochon must now point to record evidence that is sufficient for a reasonable jury to "not only disbelieve the employer's reasons, but conclude that the real reason the employer took a challenged action was a prohibited one." *Walker*, 798 F.3d at 1093.

Rochon has utterly failed to identify any such evidence.  For example, a successful discrediting of the FBI's proffered reason for initially denying him the card might have involved evidence that the CJIS name check did not actually reveal any past charges against Rochon, or that, in contrast to Bladen's testimony, there really was no report from CJIS that recommended to Bladen that he disapprove Rochon's application. Similarly, Rochon could have undertaken to establish that it was *not* Bladen's ordinary practice to deny an application for an HR-218 card when CJIS recommended that he do so, which, if coupled with evidence that Bladen knew about Rochon's litigation history, could give rise to a reasonable inference that Bladen had a retaliatory motive when he denied the card in Rochon's case.  But Rochon has pointed to no such evidence; instead, his argument in opposition to Defendant's motion appears to rest exclusively on several unfounded assertions regarding what Rochon perceives to be the illegitimacy of the practice of denying an HR-218 card to someone who has only been *charged* with a

18

crime in the past as opposed to someone who has been *convicted* of such a crime. (*See, e.g.*, Pl.'s Opp'n at 18, 25.)

Specifically, Rochon maintains that the FBI's policies require that an applicant's request for an HR-218 card be granted so long as the applicant has not been convicted of a disqualifying crime (*see id.* at 18) and that, because Bladen based his decision in Rochon's case on the mere fact of Rochon's past charges (*see id.* at 25), a jury could infer retaliatory motive.  But Bladen did not testify to having reached the denial decision with respect to Rochon's application based on his consideration of Rochon's past charges; instead, he stated that he based his conclusion on CJIS's recommendation, and nothing in the record indicates otherwise.  Moreover, even if Rochon has correctly interpreted FBI policy and can establish that Bladen actually considered Rochon's charges in contravention of that policy, such a demonstration would only show that Bladen was *mistaken* about the permissible bases for denying a card, which, alone, may not be sufficient to give rise to an inference of intentional discrimination.  *See George v. Leavitt*, 407 F.3d 405, 415 (D.C. Cir. 2005) ("[P]roving that an employer's reason is false will not always be sufficient to demonstrate pretext . . . . because an employer's action may be justified by a reasonable belief in the validity of the reason given[.]").  Similarly, not once does Rochon dispute that a CJIS report recommending denial of his card was actually generated, or that the report was accurate in that it reflected the status—justly or not—of his 1998 charges.  To the contrary, the record demonstrates that Rochon took steps to have those past charges expunged so that they would not surface again in any subsequent name check (*see* Ex. 12 to Def.'s Mot., ECF No. 21-1,

40–48, at 41–46), and this action on his part demonstrates clearly that such charges had, in fact, appeared on his record when the CJIS name check was first run.

Thus, this Court finds that, however vigorous, Rochon's lines of attack are largely, if not entirely, irrelevant to the task at hand.  As explained, to survive Defendant's motion for summary judgment, the law requires Rochon to provide sufficient evidence from which a reasonable jury could conclude that the FBI's stated reasons for denying him the card were not the real reason for the denial and that, in fact, the real reason was unlawful retaliation.  None of Rochon's assertions even come close to demonstrating that it was not Bladen's ordinary practice to honor the CJIS recommendation or that no negative CJIS report really issued in connection with Rochon's name check (circumstances that reasonably could give rise to an inference that the FBI's stated reason is objectively false), and Rochon has not pointed to anything else that even remotely suggests that Bladen was actually engaging in intentional retaliation when he rejected Rochon's HR-218 application.  The smoke and mirrors of Rochon's various attempts to highlight standard agency policy regarding the issuance of HR-218 cards and to undermine the credibility of the FBI's witnesses do not obscure the obvious: there is simply no evidence that, when Rochon's application came across his desk, Bladen deviated from his usual practice of denying the HR-218 card based on a CJIS recommendation for non-approval or otherwise intentionally rejected Rochon's application in order to punish Rochon for suing the agency in the past.  And when the law governing Title VII claims is properly understood, nothing more need be found for the defendant to be entitled to judgment in its favor.  *See, e.g.*, *Walker*, 798 F.3d at 1093–94, 96 (affirming a grant of summary judgment to defendant where the

plaintiff's failure to undermine employer's proffered reasons barred any inference that the reasons given were a pretext for discrimination); *McGrath*, 666 F.3d at 1383–85 (affirming summary judgment grant where no rational juror could conclude that the nondiscriminatory reasons given for termination hid a forbidden motive).

## IV.   CONCLUSION

For the reasons stated above, and as provided in the Order this Court issued on September 30, 2015, Defendant's motion for summary judgment has been **GRANTED**.

DATE:  October 9, 2015                 *Ketanji Brown Jackson*
                                       KETANJI BROWN JACKSON
                                       United States District Judge